Van Vorst, J.
Baker was the attorney and agent of the plaintiff, the mortgagee, and as such, as long as he had the bond and mortgage in his possession, was authorized to receive the interest accruing thereon. Possessed of these instruments, under the facts of this case, the mortgagor was safe in paying the interest to him. But the possession of these papers alone gave him no authority to receive a part of the principal sum secured by this mortgage before it was due. To be so authorized he should have been specially and pointedly directed by the mortgagee to collect or receive it. The time fixed by the bond for the payment of the principal sum was the mortgagee’s highest exprdssion of his intentions as to the time for the payment of the principal. Of such limitations upon the power of the attorney to receive money upon the mortgage the mortgagor was bound to take notice. The receipt therefore by Baker from the mortgagee of the sum of $1,000, in the month of February, 1882, towards the principal sum, not then due, was wholly unauthorized. This payment was concealed from the plaintiff, and he is not bound by it (Smith agt. Kidd, 68 N. Y., 130; Williams agt. Walker, 2 Sandf. Ch., 325.)
In October, 1882, the plaintiff withdrew from Baker the land and mortgage. That ended all semblance of power or *312 authority on the part of Baker to receive anything on the mortgage. A mortgagor who pays interest or principal upon a mortgage to any one other than the mortgagee himself, when the person receiving the moneys has not in his possession the obligation, does so at his peril. In order to hold the principal to such payment he must be prepared to prove express authority. Baber, according to the evidence, retained in his own hands, after the delivery to the plaintiff of the original documents, a copy of the bond purporting to be executed by the mortgagor. Plaintiff was wholly ignorant of the existence of another bond in the hands of Baker. It is quite likely that, with a fraudulent purpose, Baker, shortly after the execution of the bond and mortgage in suit, caused to be prepared a duplicate bond, and it is upon this duplicate that all payments of interest as well as of principal are indorsed. His purpose undoubtedly was that, in the event that the bond and mortgage should be taken from him by the plaintiff, he might have in his hands the appearance of an instrument which should enable him to receive money from the mortgagor. In that he seems to have succeeded, for at different times after-wards he applied to the mortgagor for payment of parts of the principal sum, although not due, and he received the same, and in the end a forged satisfaction-piece of the mortgage was delivered to the mortgagor with the duplicate bond.
The evidence justifies the conclusion which I have reached that the so-called duplicate bond is also a forgery. Although purporting to bear date with the genuine bond it was not written on a similar blank. The printed form of the acknowledgment differs in material points from that found upon the genuine bond. The seals also differ. Crime is often detected by circumstances which the foresight of the perpetrator can neither discern nor guard against. The signature of the obligor is so well simulated that he might himself be deceived. The ink spots even on the real bond are imitated on the false instrument. But an inspection of the signature, and by a comparison of it with genuine signatures of the *313 obligor, satisfies me that it is a forgery. This conclusion is supported by the testimony of experts. But the care and diligence of the attorney for the plaintiff has been rewarded by a discovery of evidence which puts the matter at rest. The acknowledgment upon this blank was not in the form printed for the stationers who sold it, until the year 1880, and after the time the bond and mortgage bear date. This is shown by the testimony of employes of the stationer and printer. The guilty party thus furnished the means of detecting his crime. The mortgagor is dead, and no light upon this subject can be had from him. But even were the bond in question a genuine instrument, then there were two bonds, for some unaccountable reason, executed and outstanding, when he paid the mortgage. And yet, when he received the satisfaction-piece, it was accompanied only by this instrument, the bond and mortgage remaining in the hands of the mortgagee.
From all the evidence, I am justified in deciding that the whole amount of principal is due and unpaid upon the bond and mortgage, and there must be judgment of foreclosure and sale.